[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 12, 2009
THOMAS K. KAHN
CLERK

No. 08-15603
Non-Argument Calendar

_____

D. C. Docket No. 06-01038-CV-LSC-S

WALTER LEE TODD,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 12, 2009)

Before CARNES and PRYOR, Circuit Judges, and STAGG,* District Judge.

PER CURIAM:

Plaintiff-Appellant Walter L. Todd sued his former employer, Defendant-

_____

*Honorable Tom Stagg, United States District Judge for the Western District of
Louisiana, sitting by designation.

Appellee Michael J. Astrue, Commissioner of the Social Security Administration (SSA), asserting numerous violations of Title VII and the Americans with Disabilities Act. He based his claims on assertions of discrimination based on his race, his sex, a disability, and retaliation for filing administrative EEO complaints. The district court granted Astrue's motion for summary judgment and dismissed all of Todd's claims. Todd timely filed a notice of appeal.

We have reviewed the record on appeal, including the district court's Memorandum of Opinion which thoroughly analyzes all aspects of Todd's claims, disposing of each in turn. We are satisfied that the district court accurately applied the law to the facts and arrived at the correct conclusion. Our decision is reinforced by the declarations of Todd's seven supervisors, which recount what the district court kindly called Todd's "previous misconduct." Among the misconduct his supervisors swore to: Todd was "always disruptive during unit meetings;" was "argumentative and insubordinate with his supervisors;" was "extremely willful;" "seemed to enjoy an audience and like[d] to challenge management during staff meetings;" was "disruptive;" had a "confrontational relationship" with his superiors; "behaved in a manner that made his co-workers uncomfortable," which included "staring at women as they walked by" and "making derogatory comments;" was "quite belligerent;" "seemed determined not to follow the

instructions of his supervisors;" and was "very arrogant."

And Todd did not just misbehave. He also misperformed. His supervisors described Todd's work quality this way: his "performance was not up to par;" he had "a problem following written guidelines;" he "was not inclined to defer to SSA policies and procedures;" he "was unable to read, interpret and apply the information available on various inquiries;" his "inefficient work habits contributed to his inability to handle a proportionate share of incoming calls;" that when he did take calls, he "place[d] callers on hold for extended periods of time," gave them "incorrect information, took erroneous actions," and "violated SSA policy by releasing information to unauthorized persons;" he was unable to handle routine calls in an efficient and timely manner;" he had a tendency to "develop issues that were not important or even relevant to the call;" and "his performance was not equal to that of his colleagues."

We, like one of Todd's supervisors, "might not have recommended keeping him after the expiration of his probationary period." Actions of an employer that are too kind, however, are not a basis for a lawsuit.

**AFFIRMED.**[1]

---

[1] This case was originally scheduled for oral argument, but after review the panel unanimously decided that oral argument was not necessary. See 11th Cir. R. 34-3(f).